UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY, an Ohio corporation,<br><br>Plaintiff,<br><br>v.<br><br>SEA SHEPHERD CONSERVATION SOCIETY, an Oregon nonprofit corporation, PAUL WATSON, MARINE GAEDE, BEN ZUCKERMAN, LANI BLAZIER, PETER RIEMAN, ROBERT WINTNER, BOB TALBOT, and SUSAN HARTLAND,<br><br>DefendantS. | Case No. C13-1017RSM<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

THIS MATTER comes before the Court on Motion for Summary Judgment by Plaintiff Great American Insurance Company ("Great American"). Dkt. # 10. Great American moves the Court for a declaratory judgment that it has no duty to defend or indemnify Defendants with regard to contempt proceedings in an underlying lawsuit for which Defendants seek coverage under a liability insurance policy. The Court heard oral argument from the parties on May 9, 2014. Having reviewed the parties' briefs in support and opposition as well as the remainder of the record, the Court grants Plaintiff's Motion and enters judgment in favor of Great American for the reasons stated herein.

**Background**

This insurance coverage action involves coverage under two liability Policies issued by Great American for defense costs incurred by Defendant Insureds. Great American issued to Defendant Sea Shepherd Conservation Society ("Sea Shepherd") a first ExecPro Nonprofit Solution Policy for the period of June 23, 2011 to June 23, 2012 (the "2011 policy") and a second

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

1  substantively identical Policy for the period of June 23, 2012 to June 23, 2013 (the "2012 Policy").
2  The instant coverage dispute arises out of contempt proceedings in a lawsuit filed against
3  Defendants Sea Shepherd and its founder Paul Watson on December 8, 2011 by the Institute for
4  Cetacean Research ("ICR"), which enjoined Defendants from attacking ICR whaling research
5  vessels. *See The Institute of Cetacean Research, et al. v. Sea Shepherd Conservation Society, et
6  al.*, Case No. 2:11-cv-02043-RAJ, appeal docketed, No. 12-352266 (9th Cir. Apr. 10, 2012) (the
7  "ICR Litigation"). Great American seeks declaratory judgment that, under the terms of the
8  Policies and under the law of the State of Washington, it has no duty to defend or indemnify
9  Defendants for costs incurred in the ICR litigation, including contempt proceedings, based on the
10  lack of timely notice and a Policy exclusion precluding coverage for claims arising out of damage
11  to tangible property. Plaintiffs argue that coverage is warranted for the contempt proceedings as a
12  timely reported "Claim," which they contend is independent of, and jurisdictionally separate from,
13  the ICR Litigation.

14  **1)  2011 and 2012 Insurance Policies**

15  Sea Shepherd's 2011 and 2012 Policies both set forth Great American's duty to defend its
16  Insureds, as well as its limits. Each Policy is described on its first page as a "Claims Made and
17  Reported Policy" and on its Declarations page as a "Claims Made Policy." *See* Dkt. ## 1-1 & 1-2,
18  at pp. 1, 4.  Section I of the Policies obligates Great American to pay for Loss and Costs of
19  defense for any "Claim" first made during the "Policy Period" against any Insured Person and/or
20  Organization for a Wrongful Act. *See Id.* at p. 4. The Policies define "Claim," in relevant part, as:

21
22
> A civil proceeding, including any appeals therefrom, made against any Insured seeking monetary or non-monetary (including injunctive) relief commenced by service of a complaint or similar pleading.

23  *Id.* at § III.A(2), p. 5. The Policies further set forth the definition of a Wrongful Act as, in relevant
24  part, "actual or alleged error, misstatement, misleading statement, act or omission, neglect or
25  breach of duty." *Id.* at § III.R(1), p. 8. "Related Wrongful Acts" are defined as those which are
26
27  "causally connected by reason of any common fact, circumstance, situation, transaction, casualty,
28  event or decision." *Id.* at § III.O, p. 7.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 2

Several provisions limit the scope of coverage under the Policies. Principally at issue in this action are the requirements for timely notice of a Claim and Exclusion IV.D, one of thirteen distinct exclusion provisions set forth in the Policies. Notice requirements under the Policies are provided in Section VII, according to which:

> The Insureds shall, as a condition precedent of their rights under this Policy, give the Insurer notice in writing of any Claim made during the Policy Period. Such notice shall be given as soon as practicable after the date the President…or person with equivalent responsibility has knowledge of the Claim, and in no event later than ninety (90) days after the end of the Policy Year.

*Id.* at § VII.A, p. 11. Both Policies define "Policy Year" to mean, in relevant part, "the period of one year following the effective date and hour of this Policy or the period of one year following any anniversary date thereof falling within the Policy Period." *Id.* at § III.M, at p. 7. Exclusion IV.D, in relevant part, bars coverage under the Policies for any Claim made against any Insured,

> based upon, arising out of, related to, directly or indirectly resulting from or in consequence of, or in any way involving: (1) bodily injury, sickness, disease or death of any person, assault or battery; (2) damage to or destruction of any tangible property or the loss of use of any tangible property; or (3) humiliation mental anguish, or emotion distress….

*Id.* at § IV.D, p. 9. The reach of the Exclusions section as a whole is limited by a non-imputation clause, providing that: "With respect to this section of the Policy, no fact pertaining to or conduct by any Insured Person shall be imputed to any other Insured Person…". *Id.* at § IV, p. 10.

**2) ICR Litigation and Ensuing Events**

On December 8, 2011, ICR filed suit against Defendants Sea Shepherd and Paul Watson in the U.S. District Court for the Western District of Washington. ICR subsequently filed a motion for preliminary injunction, which Judge Jones rejected on March 19, 2012. *See Great American Insurance Co. v. Sea Shepherd, et al.*, 860 F.Supp. 2d 1216 (W.D. Wash. 2012), *rev'd*, 725 F.3d 940 (9th Cir. 2013).

The details of ensuing events are provided by the Report and Recommendation of the Appellate Commissioner appointed for the ICR Litigation contempt proceedings, filed January 31, 2014. *See* Dkt. #97. In reliance on Judge Jones's ruling, Watson and other members of the Sea Shepherd Board prepared to conduct the ninth annual whale defense campaign, entitled "Operation Zero Tolerance" ("OZT"). *See* Dkt. # 97, p. 6. Sea Shepherd took the leading administrative role, organizing its foreign chapters and four vessels in a whale defense campaign designed to prevent capture of whales by ICR in the Southern Ocean. Sea Shepherd of Australia ("SSAL"), an independent foreign entity, took a leading role in preparing for OZT logistics. *See id.* at pp. 2, 7. The majority of OZT funding had been secured when the Ninth Circuit Court of Appeals issued a *sua sponte* injunction pending appeal on December 17, 2012, enjoining Sea Shepherd and Watson from physically attacking or endangering any ICR vessels or approaching them within 500 yards. *See Great American,* 702 F.3d 573.

Following news of the injunction, the Sea Shepherd Board of Directors consulted with counsel and formulated a strategy to comply with the injunction and withdraw from OZT. The Board included Watson, who also served as paid Executive Director, and volunteer members Lani Blazier, Marnie Gaede, Bob Talbot, Robert Wintner, Ben Zukerman, and Peter Rieman, all of whom are Defendants in the instant action. Defendant Susan Hartland, who joined Sea Shepherd in January 2012 as administrative director, also took part. The resulting "separation strategy" called for Sea Shepherd to sever financial ties with OZT. Dkt. # 97, at pp. 15-20. Watson immediately submitted his resignation, and the Board transferred the ships and equipment under its ownership to SSAL. *Id.* at pp. 22-26.

The OZT took place, initiating several alleged violations of the preliminary injunction between January 29 and February 28, 2013. *Id.* at pp. 31-39. The majority of the alleged violations involved incursions on the safety perimeter established by the injunction, as well as two collisions.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 4

1  Watson remained on the *Steve Irwin* vessel in an observer capacity, and was thereby on the vessel
2  when it breached the safety perimeter. *Id.* at pp. 29, 38-39.
3      The Ninth Circuit issued its decision in the ICR Litigation on February 25, 2013, reversing
4  the district court and ordering the injunction to continue under further order of the court. *See Great*
5  *American*, 708 F.3d 1099. On June 7, 2013, the Ninth Circuit issued its mandate and returned
6
7  jurisdiction of the ICR Litigation to the Western District. *See* Case No. 12-35266, Dkt. # 161.
8     **3) Contempt Proceedings**
9      On February 11, 2013, ICR filed a motion for contempt against Sea Shepherd, as well as a
10 motion to appoint a special master to conduct contempt proceedings, based on alleged violations
11 of the injunction that took place during the OZT. On February 21, 2013, the Ninth Circuit referred
12 the contempt motion to the Appellate Commissioner. *See* Dkt. # 97 at p. 40. ICR amended its
13
14 motion for contempt on March 6, 2013, to allege additional violations and include Defendant
15 Watson and seven non-parties (five current directors of Sea Shepherd, former director Rieman,
16 and administrative director Hartland). On April 12, 2013, ICR filed the controlling Second
17 Amended Motion for Contempt ("SAMC") against the same individuals, alleging four additional
18 violations. Dkt. # 1-4.
19
    The Ninth Circuit entered a scheduling order for the contempt proceedings on April 16,
20
21 2013, providing for discovery and a separate hearing before the Appellate Commission. *See* Dkt. #
22 88, Ex. 2. On January 31, 2014, the Appellate Commissioner issued the Report and
23 Recommendation in the contempt proceeding following a hearing that took place from October 28
24 through November 6, 2013. *See* Dkt. # 97. The R&R recommended that the Defendants should not
25 be found liable for contempt. In particular, the Commissioner recommended against a finding of
26 personal liability for the volunteer directors and Hartford, as they took reasonable steps to comply
27 with the injunction based on advice of counsel. *See id.* at pp. 72-75. Both parties agreed at oral
28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 5

1 argument that the Appellate Commissioner's recommendations do not affect the disposition of this
2 summary judgment Motion.

### 4) Insurance Coverage Action

Sea Shepherd made its first written request for coverage related to the ICR Litigation in a February 13, 2013 e-mail from Sea Shepherd's counsel, Charles Moure, to Great American, attaching a copy of the original motion for contempt. *See* Dkt. # 11 (Marler Decl.), ¶ 4 & Ex. C. Great American filed this action for a declaratory judgment on June 12, 2013 (Dkt. # 1), disclaiming its obligation to provide coverage, followed by a Motion for Summary Judgment on July 11, 2013 (Dkt. # 10). Great American's Motion was continued to allow for discovery under F.R.C.P. 56(d) and re-noted to allow for consideration on December 27, 2013. *See* Dkt. ## 43, 86.

In the instant Motion, Great American takes the position that the ICR Litigation was a "Claim" first made on December 9, 2011, during the 2011 Policy Period but not reported until Moure's February 13, 2013 e-mail, well after the end of the 90-day grace period under the 2011 Policy. Great American contends that it consequently has no duty to cover the untimely reported claim under Washington State law. Great American further contends that regardless of the timing of notice, the claim would be barred under the § IV.D Exclusion, as it arises out of the assault and property damage at issue in the ICR Litigation. *See* Dkt. # 10.

Defendants disagree that the claim was untimely made. Defendants contend that the contempt proceedings constitute a separate and distinct claim first made and reported within the 2012 Policy Period. *See* Dkt. # 87. Defendants further argue that the contempt proceedings involved allegedly wrongful acts by Insureds unrelated to those that gave rise to the ICR Litigation and not arising out of bodily injury or property damage that would trigger § IV.D exclusion. They also claim that the non-imputation clause operates to prevent excluded acts from being imputed to the Defendant Insureds. Alternatively, Defendants claim that the 2011 Policy is ambiguous with

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 6

respect to whether it is a "claims made" or "claims made and reported" policy. If the former, Defendants argue that American General is obligated to provide coverage under it unless it can demonstrate that it was actually prejudiced by lack of proper notice.

## Analysis

### 1) Standard of Review

To prevail on summary judgment, Great American must show that there is no genuine dispute as to any material fact supporting its position and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Great American is thus entitled to summary judgment should Defendants fail to make a sufficient showing on an essential element of their case with respect to which they bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those that may affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In ruling on a motion for summary judgment, the court does "not weigh the evidence or determine the truth of the matter but only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco*, 41 F.3d 547, 549 (9th Cir. 1994) (internal citations omitted). Facts and reasonable inferences are viewed in the light most favorable to Defendants as the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F.3d 337, 345 (9th Cir. 1995).

Under Washington law, "[i]nterpretation of insurance policies is a question of law, in which the policy is construed as a whole and each clause is given force and effect." *Overton v.*

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 7

*Consol. Ins. Co.*, 145 Wn.2d 417, 424, 38 P.3d 322 (2002). The Court gives policy terms a "fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Id.* (citations omitted). Insurance policy exclusions, as well as any ambiguity in policy language, are to be strictly construed against the insurer. *American Best Foods, Inc. v. Alea London, Ltd.*, 168 Wash.2d 398, 407, 229 P.3d 693 (2010); *Queen City Farms, Inc. v. Central Nat'l Ins. Co. of Omaha*, 882 P.2d 703, 720, 126 Wn.2d 50, 81 (1994). However, if the policy language is clear and unambiguous, the court must enforce it as written and may not create ambiguity where none exists. *Quadrant Corp. v. American States Ins. Co.,* 154 Wash.2d 165, 171, 110 P.3d 733 (2005). In interpreting policies, courts are bound by the definitions provided therein. *Overton*, 145 Wn. 2d at 427.

**2) Coverage Under 2011 Policy**

Defendants devote a significant portion of their Response brief arguing that coverage may be available under the 2011 Policy, though they elected not to press this claim at oral argument. Nonetheless, the Court herein addresses coverage under the 2011 Policy, as the possibility of coverage would preclude summary judgment at this stage. Defendants' argument for coverage is based on what they see as an ambiguity on the face of the 2011 policy, which refers to the Policy as a "Claims Made and Reported Policy" on the D16100 form and on the Declarations Page as merely a "Claims Made Policy." *See* Dkt. # 1-1, at pp. 1, 4. According to Defendants, the Court should resolve this ambiguity in favor of Insureds and find the 2011 Policy to be a Claims Made policy, under which coverage is allegedly available for a Claim reasonably reported after its lapse absent a showing of prejudice.

Defendants' argument fails, however, because the distinction they draw is one without a difference. A claims-made policy functions identically to a claims-made-and-reported policy under Washington law where, as here, it possesses a finite notice requirement. *See* Dkt. # 1-1, §

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 8

VII.A (providing that insured must give notice within 90 days of the policy year as a condition precedent to coverage). Unlike occurrence policies, which require only reasonable notice, claims-made policies "attempt to define the risk so that it is ascertainable at the end of the policy period." *Safeco Title Ins. v. Gannon*, 54 Wash. App. 330, 774 P.2d 30, 34 (1989). Washington law thus requires that the reporting requirements in claims-made policies be strictly construed in order to enforce the bargained-for terms of the contract. *Id.* at 338 ("Critically [], claims-made policies require that the notice be given *during the policy period* itself.")(emphasis in original)(citing *Gulf Ins. Co. v. Dolan, Fertig and Curtis*, 433 So.2d 512, 515-16 (Fla. 1983)).

Contrary to Defendants' assertions, an insurer that issues a claims-made policy under Washington law also does not need to show prejudice in order to deny coverage for an untimely reported claim. *Id.; see Moody v. American Guar. and Libaility Ins. Co.*, 804 F.Supp.2d 1123 (W.D. Wash. 2011). A Washington court of appeals in *Safeco Title Ins. v. Gannon* explained that applying the notice-prejudice rule to a claims-made policy would otherwise "expand coverage to include subsequent claims based on facts unreported during the policy period or unrecognized as potential claims by the insured – coverage not contracted for or provided." 774 P.2d at 339. Applying the notice-prejudice rule to the instant contract would also read the unambiguous notice requirement out of the 2011 Policy, which courts under Washington law are not permitted to do. *See Overton*, 145 Wn. 2d at 424. Accordingly, coverage is not available under the 2011 Policy for a Claim first made in December 2011 but not reported until February 2013, well beyond the Policy's unambiguous deadline for notice.

3) **Coverage Under 2012 Policy**

The principal question before the Court is whether coverage is available for defense costs incurred in the contempt proceedings under the 2012 Policy. In arguing for coverage, Defendants contend that the SAMC constitutes a separate and distinct Claim from the ICR Litigation, which

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 9

was first made and timely reported during the 2012 Policy Period. As evidence of its status as a separate Claim, Defendants point to three distinctions between the contempt proceedings and the underlying ICR Litigation: 1) the contempt proceedings are "jurisdictionally separate" from the ICR Litigation; (2) the SAMC added contemnors that were not originally parties to the ICR Litigation; and (3) the SAMC alleged conduct that occurred after the ICR litigation was filed. Great American disagrees, arguing that the contempt proceedings and ICR Litigation are either the same Claim or "related" such that they are deemed one Claim under the terms of the Policy. Deciding this issue requires the Court to interpret, as a matter of law, the terms of the 2012 Policy. *Overton*, 145 Wn.2d at 424.

The Court looks to the definition provided in the 2012 Policy in construing the contours of a "Claim." *Overton*, 145 Wn.2d at 427; *Safeco Title Ins.*, 54 Wash. App. at 335. The 2012 Policy defines a Claim, in relevant part, as a "civil proceeding, including any appeals therefrom, made against any Insureds seeking monetary or non-monetary (including injunctive) relief commenced by service of a complaint or similar pleading." Dkt. # 1-2, § III.A.2. The plain language of this term defeats Defendants' first contention that the jurisdictional separation of the ICR Litigation and the SAMC renders the latter a distinct claim. Rather, the SAMC is indisputably part of an "appeal" from the ICR Litigation and thereby part of the Claim initiated by filing of the original ICR complaint. Moreover, federal courts consistently construe a civil contempt proceeding as a continuance of the underlying litigation rather than a separate civil proceeding. *See nCube Corp. v. Sea Change Int'l, Inc.*, 809 F.Supp.2d 337, 345 (D. Del. 2011) ("a contempt proceeding is not a new proceeding, but, rather, a continuation of the same proceeding"); *Consolidation Coal Co. v. Local 1702, United Mineworkers of Am.*, 683 F.2d 827, 830 n. 3 (4th Cir. 1982); *Fox v. Capital Co.*, 299 U.S. 105 (1936) (holding that civil contempt orders are interlocutory and hence not reviewable as final orders). Nor does the presence of a separate scheduling order and hearings for

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 10

the contempt proceedings render them a distinct Claim. Appeals necessarily take place on a different schedule and with separate hearings than governed the suit in lower court.

The reasonable interpretation of a "Claim," so defined, is that it encompasses the entire ICR lawsuit that was initiated by service of complaint in December 2011. Defendants rely solely on *Kilcher v. Cont' Cas. Co.*, 2013 WL 1330193 (D. Minn. 2013), *rev'd* 2014 WL 1317296 (8th Cir. 2014), for the proposition that a single legal action may contain multiple claims. However, the district court's decision in *Kilcher* was not only reversed on appeal, but it also interpreted a Policy in which a Claim was more narrowly defined as "a written demand for monetary damages, or [] a civil adjudicatory or arbitration proceeding for monetary damages…." *Id.* at *4. By contrast, a "Claim" as defined in the instant matter is more capacious, referring to the entire civil proceeding that follows service of the initial pleading. Given this definition, the natural interpretation is that the entire lawsuit, including contempt proceedings initiated under it, constitutes a single Claim. Courts interpreting insurance policies that defined "Claim" in similar terms have reached this same conclusion. *See, e.g.*, *Cmty Found. For Jewish Educ. v. Fed Ins. Co.*, 16 Fed.Appx. 462, 466 (7th Cir. 2001) ("If someone is asked what sort of civil proceeding is set in motion by the service of a complaint or similar pleading, it is difficult to imagine any answer other than a lawsuit."); *Informix Corp. v. Lloyd's of London*, 1992 WL 469802, *2 (N.D. Cal. 1992).

The Court also finds unavailing Defendants' argument that the addition of new contemnors and allegation of events that took place after the ICR complaint was filed transforms the SAMC into a new "Claim." Courts consistently hold that the addition of new causes of action in a civil proceeding, ordinarily through an amended complaint, does not give rise to a new Claim. *See Cmty Found. For. Jewish Educ.*, 16 Fed.Appx. at 467 ("The fact is that we are dealing with the same complaint that is twice amended, and that is not a new claim."); *National Union Fire Ins. Co. of Pittsburgh, PA v. Willis*, 296 F.3d 336, 342 (5th Cir. 2002) (concluding that a new claim of

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 11

misrepresentation set forth in a fourth amended complaint "does not give rise to a new theory of recovery that is a separate claim governed by" a later in time policy). Giving the Policy language its facially intended effect, to construe a lawsuit as a single claim, serves an important purpose of "allowing the insurance company to know in advance that its exposure will not include the outgrowth of a pre-policy lawsuit." *Cmt Found. For Jewish Educ.*, 16 Fed.Appx. at 467. At the same time, it protects the Insured by requiring that the insurance company be held "liable for subsequent amendment to claims first brought during the policy period." *Id.*

Moreover, even if it was not beyond the plain language of the Policy to construe the SAMC as a new Claim, it is still "related" to the ICR Litigation under the terms of the Policy such that they are deemed a single claim. Section V.B of the Policy (the "Related Claims Provision") aggregates Claims that involve "the same Wrongful Act or Related Wrongful Acts of one or more insurers" into a single Claim. Section V.B further deems this single Claim to have been made on the earlier of: 1) the earliest date any of the aggregated Claims was first made; or 2) the earliest date on which any of the Wrongful or Related Wrongful acts was reported under the Policy. *See* Dkt. # 11-2, at p. 10. The Policy defines "Related Wrongful Acts" as "Wrongful Acts which are casually connected by reason of any common fact, circumstance, situation, transaction, casualty, event or decision." *Id.* at p. 7. In analyzing the requisite degree of casual connection necessary in the insurance context, Washington courts have interpreted the phrase "causally connected" to be akin to but-for causation, rather than proximate causation. *See, e.g., Butzberger v. Foster*, 151 Wash.2d 396, 405, 89 P.3d 689 (2004); *Beckman By and Through Beckman v. Connolly*, 79 Wash.App.265, 274, 898 P.2d 357 (1995).

Here, the SAMC and the ICR Litigation arise out of a common set of facts, circumstances, and events – the Defendants' alleged attacks on the ICR's sailing vessels in the South Ocean. But for the initiation of the ICR Litigation, and the preliminary injunction issued under it, there would

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 12

have been no basis for contempt proceedings against Defendants. The SAMC's addition of new contemnors and new events does not change this analysis, where the SAMC and the ICR Litigation share a causal relationship. *See WFS Financial, Inc. v. Progressive Cawws. Ins. Co., Inc.*, 232 Fed. Appx. 624, 625 (9th Cir. 2007) (holding that a related claim provision applied to "two different sets of plaintiffs in two different fora under two different legal theories" that shared a common basis in fact). A reasonable Insured reading the Policy at issue in this case would have little trouble finding contempt proceedings to be casually connected to the ICR Litigation, where the contemnors are alleged to have violated the very injunction that the ICR Litigation put in place, and the contempt proceedings could not have taken place but for the underlying ICR Litigation.

Accordingly, the Court finds that the SAMC forms part of a single Claim that was first made when the complaint initiating the ICR Litigation was filed in December 2011. As the Claim was not first made during the 2012 Policy period, coverage is not available under the 2012 Policy. As the Court finds that neither the 2011 nor the 2012 Policy provides coverage for the contempt proceedings, the Court need not reach Plaintiff's further argument that coverage would also be precluded by Exclusion IV.D. While the result the Court reaches is unfortunate for Defendants, who have been forced to defend against contempt proceedings that they evidently tried to prevent and on which they may ultimately prevail and, perhaps, even recoup defense costs, it is nonetheless dictated by the plain language of their bargained-for insurance Policies.

//

//

//

//

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 13

**Conclusions**

For the foregoing reasons, the Court hereby ORDERS that Plaintiff Great American Insurance Company's Motion for Summary Judgment (Dkt. # 10) is GRANTED. The Court directs the Clerk to enter final judgment in favor of Plaintiff.

Dated this 23rd day of May 2014.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 14